EARLY CHEVROLET COMPANY, INC. *v.* NICHOLSON

No. 40193          June 11, 1956          88 So. 2d 111

*Teller & Biedenharn*, Vicksburg, for appellant.

*Brunini, Everett, Grantham & Quin*, Vicksburg, for appellee.

McGehee, C. J.

This is a replevin suit brought by the appellee Edwin Neil Nicholson, Jr., of Mobile, Alabama, against the appellant Early Chevrolet Company, Inc., of Vicksburg, Mississippi, for the possession of one 1950 Holiday Oldsmobile, motor number 8-A-562399, which was alleged in the affidavit for replevin, writ of replevin, sheriff's return on the writ, and in the declaration in replevin, to be of the value of $800.00.

The automobile had been sold and delivered to the appellant at Vicksburg by Mrs. Nora Lee Nicholson, stepmother of the appellee, and for a consideration of $760,00. It had been repainted and reconditioned by the appellant after its purchase thereof, and hence it was valued in the sheriff's return on the writ of replevin at the sum of $800.00. Neither the plaintiff nor the defendant gave bond for the automobile, and it therefore remained in the care and custody of the sheriff of Warren County pending the trial of the case.

The judgment of the County Court of Warren County was that the sheriff was authorized, empowered, and directed to deliver the automobile to the plaintiff and an appeal to the circuit court was perfected by the defendant with a $1,600.00 supersedeas bond. The county court had tried the case without the intervention of a jury, and did not assess the value of the automobile. The circuit court affirmed the judgment of the county court, and granted an appeal to the defendant with supersedeas to this Court again fixing the bond at the sum of $1,600.00.

The plaintiff in replevin, who is the appellee here, entered the military service of the United States on January 11, 1952, and was not finally released therefrom until January 11, 1955. The plaintiff introduced as an exhibit to his testimony the original conditional sale contract for the automobile, showing the same was purchased from Bush Motors at Mobile, Alabama, on May 30, 1953, in the name of his father E. N. Nicholson, who signed the contract as "purchaser". The contract affirmatively shows that the total time price of the automobile was $2,141.10, payable in an amount on or before delivery of $945.00, leaving a deferred balance of $1,196.10, payable to the Central Finance Company in 18 monthly installments of $66.45.

The proof discloses without conflict that the father of the plaintiff traded-in his 1949 Mercury automobile in part payment of the purchase price of the Oldsmobile here in question. The record does not disclose whether he was allowed the full down-payment of $945.00 for the Mercury automobile or whether he was allowed a part of the said down-payment therefor and paid the difference of the down-payment in cash.

There was never any transfer of the legal title of the automobile made in writing from the purchaser E. N. Nicholson, father of the plaintiff, to his son Edwin Neil Nicholson, Jr., the plaintiff herein.

The sole testimony as to the facts in connection with the purchase of the automobile from Bush Motors, and the subsequent possession thereof by his stepmother, Mrs. Nora Lee Nicholson, was given by the plaintiff and his stepmother.

He testified that his father was in Mobile at the time of the trial, and the record fails to show that his father was unable to have attended the trial in the county court of Warren County, Mississippi, or that he gave any deposition as to the ownership of the said automobile.

The plaintiff testified that he returned to the States from overseas on February 16, 1953, which would have been prior to the purchase of the automobile on May 30, 1953, but he testified elsewhere in the record that he had thought that he would be able to leave Korea on June 22, 1953, but that due to certain confusion about his credits he was not able to leave until August, 1953, and he evidently meant that he returned to the States in September, 1953. The brief here on his behalf assumes that he returned to the States in September, 1953, because he testified that he was in Korea at the time of the purchase of the automobile on May 30, 1953, under the conditional sale contract signed by his father as purchaser of the automobile. He was asked: "Q. Had your father purchased this 1950 Oldsmobile before you returned? A. Yes, sir. Q. Did you furnish or give him the money to buy this automobile? A. Yes, I did. Q. How did you do that? A. I sent the money in money orders and allotment checks. * * * Q. Did you ever send your father a large or substantial amount of money at one time? A. When I returned from overseas I gave him $200.00. Q. What was the source of that money? A. That was money I had accumulated overseas."

The plaintiff was further asked "Q. When you came back in September of 1953, where did you go from there? A. Fort Devens, Mass. Q. Did you take it (the automobile in question) with you? A. No." His testimony fur-

ther shows that he came home on a short stay and then
went to Fort Bragg, N. C., and he was asked "Q. Did
you take the automobile back to Fort Bragg, N. C.? A. I
did. Q. How long did you keep it there? A. A little over
6 months. Q. Where did you go from Fort Bragg? A. I
stayed at Fort Bragg, but in June I had an accident with
the automobile and it cost me a good deal of money to get
it fixed, so I brought it home. Q. Did you return back
to Fort Bragg? A. Yes, sir. Q. Where were you sepa-
rated from the services? A. Fort Bragg. Q. How much
were these checks you sent home?. A. $80.00 for around
6 or 7 months. The rest of the time $40.00 a month. Q.
Was that a dependency allotment? A. No, I sent this
money out of my pay. * * * Q. You sent that money home
with the understanding that they were to purchase a car?
A. Yes, sir. Q. How did you do that, by letter? A. I
told him when I came back from overseas, by letter,
yes, I wanted to have a car. He bought this Oldsmobile
because he knew I was coming home; I was supposed to
leave from there on the 22nd of June, but I didn't leave
until the War ended, and at the time there was a mix
up in my points for rotation, I had only acquired 36 and
I had to have 41 and I didn't get to leave (Korea) until
August."

The plaintiff was further asked: "Q. After you got
back from the service, you didn't live with your father
or stepmother? A. I stayed there at home about 3 weeks
or a month." The record clearly discloses that this ques-
tion and answer had reference to the period immediately
following the plaintiff's final release from the service
on January 11, 1955. And he was further asked: "Q.
You got the 1949 Ford (a car that belonged to his father)
and you moved somewhere else, didn't you? A. My father
lived a pretty good ways out of town (meaning from Mo-
bile) and I couldn't come back and forth, so I moved to
town. Q. You and the Ford both? A. I used the Ford."

From the time the plaintiff was finally released from
the military service on January 11, 1955, until his step-

mother carried the Oldsmobile to Vicksburg on August 13, 1955, where she sold it to the appellant on August 27, 1955, there is no proof that the plaintiff used the car in question, the proof being that from about 3 weeks after his release from the service on January 11, 1955, he used the Ford automobile belonging to his father.

The proof shows without dispute that Mrs. Nicholson, the stepmother of the planitiff, had been using the car in question from the time it was purchased on May 30, 1953, until she sold it to the appellant on August 27, 1955, with the exception of the 5 or 6 months when she consented for her husband to let the plaintiff keep it at Fort Bragg, N. C.

The testimony of the stepmother is to the effect that when she left Mobile on August 13, 1955, with the automobile and her child, born of her marriage to the plaintiff's father, together with her belongings, and in returning to the home of her parents in Vicksburg, Mississippi, the plaintiff's father was present when she left with the car, took her suitcase and placed it in the car along with her personal belongings. Since the plaintiff's father did not testify in the case, the testimony of his stepmother is wholly undisputed in regard to the foregoing facts, and also to the effect that when the car was purchased her husband gave it to her, which was on May 30, 1953, following her marriage to him on March 5, 1953. Her testimony is also wholly undisputed that she had no knowledge of any claim of the plaintiff to this car until this replevin suit was instituted by him in the County Court of Warren County.

It is contended on behalf of the plaintiff that he made the final payment on the automobile on January 17, 1955, after he was finally released from the military service on January 11, 1955, that being the approximate date on which the final installment would have become due, but on the trial he was asked by the court: "Q. Has it been paid for fully? A. No, sir, it has not."

Over the objection of the defendant the plaintiff was allowed to introduce a motor vehicle registration and tax receipt of November 19, 1954, which was procured from the Commissioner of Licenses, and bears the signatures E. N. Nicholson, Jr., licensee, and underneath this signature is the name of E. N. Nicholson, Sr. It is conceded that the plaintiff was in the military service at that time and the proof shows that this document was signed by his father, and on its face it does not purport to be a certificate of title; in fact in the caption thereof there appears "No title certificate required".

There is no direct proof that any of the checks or allotments sent by the plaintiff to his father were actually used in meeting the installments provided for under the conditional sale contract, the plaintiff's father not having testified in the case in person or by deposition, and his stepmother having testified that although she knew that these checks and allotments were received by her husband, she did not know whether they were applied on the indebtedness due on the automobile or not, since she and her husband were building a residence during a part of the period over which they were received, to the cost of which this money could have been applied.

At any rate, assuming that the automobile was paid for in part with the moneys of the plaintiff, such fact would only have resulted in the father becoming a trustee of the automobile, under a resulting trust, to the extent of the portion of the purchase price paid by the plaintiff, and with the further result that the plaintiff would only have an equitable interest in the automobile which he could have enforced while the automobile remained in the possession of his father or against anyone claiming title through him with knowledge of such trust relationship as to the automobile. The proof is wholly undisputed that the appellant, Early Chevrolet Company, Inc., was an innocent purchaser for value, and for full

value, of the automobile without notice of any equity in favor of the plaintiff.

In 46 Am. Jur., Replevin, Section 23 page 15, it is stated: "Replevin can be maintained only by one who has a general or special property in the thing taken or detained, at the time of the commencement of the action. Such right of possession or ownership must be one by a title recognized at law, as distinguished from one recognized only in courts of equity."

In Van Norman v. Van Norman, 210 Miss. 105, 48 So. 2d 633, involving an action in replevin, the Court said that an "alleged equitable lien cannot be adjudicated in a court of law."

Under the conditional sale contract it is expressly provided that: "Title to said property shall not pass to purchaser until said amount is fully paid in cash." There is no proof that there was ever any delivery of this automobile to the plaintiff by the purchaser after the same had been fully paid for on January 17, 1955. On the contrary, it is undisputed that the purchaser under the conditional sale contract let the plaintiff have a Ford automobile which he was using at the time the purchaser acquiesced in the removing of the automobile in question from Mobile, Alabama, to Vicksburg, Mississippi, by his estranged wife, and helped her to load the car upon the occasion of her departure. Moreover, her testimony is undisputed that when the car was purchased shortly after her marriage to the purchaser, he gave the same to her, and that only for a period of 5 or 6 months when plaintiff kept it at Fort Bragg, N. C., between the date of its purchase on May 30, 1953, to the date of her departure to Vicksburg on August 13, 1955, the plaintiff was in possession thereof with the consent of his father and stepmother, and it is undisputed that she requested the plaintiff to return the same to her after his return from said military camp.

■■■ From the foregoing facts, we are of the opinion that the plaintiff did not meet the burden of proof that rested upon him to show his right to the immediate possession of the car as against the appellant Early Chevrolet Company, Inc.,—a bona fide purchaser for value without notice of his alleged claim of title or equity therein.

Reversed and judgment here for the appellant.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.